# UNITED STATES DISTRICT COURT

Southern _____ DISTRICT OF California

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)
2635 Meadows Trail Lane, Chula Vista, CA

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

Case Number: '08 MJ 1392

FILED
2008 MAY -2 PM 1:01
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___KMY___ DEPUTY

I, Jeffrey Clark _____ being duly sworn depose and say:

I am a(n) Special Agent with the Drug Enforcement Administration _____ and have reason to believe
          Official Title

that  ☐ on the person of or  ☑ on the property or premises known as (name, description and/or location)

See Attachement A

in the Southern _____ District of California

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

concerning a violation of Title  21  United States code, Section(s)  841(a)(1)

The facts to support a finding of probable cause are as follows:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

5-1-08 _____ at  San Diego                CA
Date                                    City                     State

NITA L. STORMES
U.S. MAGISTRATE JUDGE
Name of Judge                                 Signature of Judge

## AFFIDAVIT

I, Jeff Clark, being duly sworn, depose and say:

**A.   DESCRIPTION OF THE PREMISES:**

1.   This affidavit is made in support of an application for a warrant to search the following premises, which I believe may contain items which are evidence of violations of 21 U.S.C. §846 and 841(a)(1) (Conspiracy, and Possess with Intent to Distribute a Controlled Substance): **2635 Meadows Trail Ln, Chula Vista, CA**, more fully described in Attachment A to this warrant.

   a.   The residence located at **2635 Meadows Trail Ln, Chula Vista, California** is the family residence of Glenda Castillo ABALOS. This fact has been established through an interview of Glenda Castillo on April 30, 2008. In addition, DMV records, vehicle registrations and drivers license information for Glenda ABALOS all indicate that **2635 Meadows Trail Ln, Chula Vista, California,** is her residence.

**B.   EXPERIENCE AND TRAINING:**

2.   I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (herein referred to as DEA), and have been so employed for approximately seven months.

3.   I am currently assigned to the San Ysidro Resident Office (Operation Alliance) and have been so assigned for about one month. As a Special Agent of the DEA, I am charged with the duty of enforcing the Controlled Substances Act (under Title 21 of the United States Code) and other duties as imposed by law. I spent four months at the DEA Academy where I received further instructions in

regards to narcotics identification, surveillance techniques, narcotics traffickers' method of operation, undercover operations, interview techniques, money laundering operations, and current trends/patterns involving the distribution of narcotics.

4. Based upon my training and experience, combined with the experience of other agents that I have consulted:

a. I know that drug traffickers often use keep vast sums of monies, which are proceeds of narcotics trafficking, within their residences. Narcotics traffickers must maintain large sums of U.S. currency on hand in order to maintain and finance their on-going narcotics business. These monies cannot be delivered to financial institutions for safekeeping without risk of attracting law enforcement attention, due to financial disclosure laws. As such, these large sums of U.S. currency are often kept for extended periods of time.

b. I also know that drug traffickers maintain documents, narcotics ledgers, and contact information for narcotics associates within their residences. Drug traffickers also maintain financial instruments and documents related to assets accumulated through drug proceeds at their residences. The nature of these records and documents are such that they too are often kept for extended periods of time.

c. I also know that firearms used to protect narcotics and narcotics proceeds are often kept by drug traffickers within their residence.

C. **PROBABLE CAUSE TO SEARCH**

5. Since this affidavit is submitted for the limited purpose of establishing probable cause to search the above-referenced location, I have not included each and every fact known to me concerning the Government's investigation in this case. I have set forth only those facts which I believe are necessary to establish probable cause for the instant requested search warrant. I have consulted with other agents in connection with this case.

6. Based upon my training and experience, the experience of other agents in connection with this investigation and the following factual summary, I believe that probable cause exists to search the residence located at **2635 Meadows Trail Ln, Chula Vista, California**.

7. The following is a brief synopsis of the arrest of ABALOS and facts supporting the identification of **2635 Meadows Trail Ln, Chula Vista, California** as her residence.

   a. On April 29, 2008 United States Border Patrol (USBP) was conducting routine operations in the Tierra Del Sol area of San Diego, approximately 1/10 mile north of the United States-Mexico Border. At that time they noted a 1999 red Dodge Stratus bearing a California license plate number 6AHD312 parked at a residence previous identified by USBP as a staging area for narcotics smuggling. A records checked revealed the vehicle was registered to Rita Melgoza of 453 Parkway City, Chula Vista, California, not the address it was parked at. The Agents noted the occupant of the house was not at home at the time. On the same day USBP Agents entered the vehicle into look out.

   b. On April 30, 2008 Border Patrol Douglas Dyson and Canine Lea

(120720) were assigned to the Interstate 8 Checkpoint. At approximately 5:56 AM, while working in the pre-primary inspection area, the aforementioned red Dodge Stratus, California license plate number 6AHD312, approached the checkpoint. At this time BPA Dyson observed an alert from his canine partner Lea. BPA Dyson instructed the primary agent, Border Patrol Agent Greg Magrath to send the vehicle to the secondary for further inspection. Once in secondary, the vehicle was parked and the driver later identified as ABALOS, Glenda was asked to step out of the vehicle. She was then asked to stand next to the freeway railing near the checkpoint office. Agent Dyson then conducted a canine sniff of the vehicle, and again received an alert and indication from his canine partner Lea to the trunk of the vehicle.

    c.    Agent Dyson and Canine Lea are trained and certified in the detection of the odors of marijuana, cocaine, heroin, methamphetamines and their derivatives as well as the odor of concealed people.

    d.    Agent Dyson requested and was granted consent from ABALOS to hand search the interior of the vehicle including the trunk. Agent Dyson opened the trunk utilizing the vehicle's key and observed multiple "bricks" wrapped in plastic and brown cellophane packing tape. This type of packaging is consistent with the typical methods of packaging utilized by contraband smugglers. ABALOS was arrested for contraband smuggling was taken inside the checkpoint for further processing.

    e.    The contraband was then taken into the checkpoint to be inventoried, weighed and logged in as evidence. The total number of bricks was

25 with a gross weight of 114.57 kgs.

    f.    A sample of one of the bricks was tested utilizing a Narkit Jr. Field Narcotics identification test kit. The sample tested positive for the properties and characteristics of marijuana.

    **D.**    **MAINTENANCE OF EVIDENCE AND RECORDS**

    8.    Based upon my training, education, experience, and participation in narcotics investigations involving distributable amount of controlled substances, weapons trafficking, and the expertise of other agents, I know that:

    a.    It is customary for individuals involved in narcotics trafficking to maintain papers, notebooks, and a variety of other types of records containing notations of controlled substances suppliers and purchasers, including cost analysis sheets and pay and owe sheets, large sums of money and notations of amounts of controlled substances and other items enumerated in Attachment B in this warrant, which constitute evidence of the commission of criminal offenses, to wit: violations of Title 21, United States Code, § 841(a)(1) and 846, (Conspiracy, and Possess with Intent to Distribute Controlled Substances).

    b.    It is customary for individuals involved in narcotics trafficking to maintain an inventory of the drug they are selling so that they are readily available for purchase, and to conceal such inventory in or near the places where they distribute the narcotics.

    c.    Narcotics traffickers often maintain large sums of currency on hand as a result of prior transactions and to facilitate narcotics transactions. Individuals involved in narcotics trafficking obtain large sums of money and try to

legitimize such profits. In order to do this, they attempt to secrete, transfer, and conceal the money by (1) placing assets in names other than their own to avoid detection while maintaining control; (2) laundering the money through what appears to be legitimate businesses; (3) hiding money in areas within their control; and (4) using the money to buy assets that are difficult to trace. Records documenting such activities include articles of personal property such as books, receipts, bank statements and records, business records, money drafts, letters of credit, money orders and cashiers checks, pass books, bank checks, and records of safety deposit boxes and storage lockers.

      d.    Individuals involved in narcotics trafficking often conceal in areas within their control, paraphernalia for packaging, marketing, selling, distributing, storing, identifying, sealing and transporting narcotics, including plastic bags, plastic wrap, and containers.

      e.    Individuals involved in narcotics trafficking must rely on others to obtain the narcotics and evidence of the identities of these co-conspirators is often maintained in their residences.

      f.    Individuals involved in narcotics trafficking use firearms, ammunition, and other related accessories for the purpose of protection and security.

      9.    Based upon all of the facts described above, I believe that such items as noted in Attachment B are presently located at the residence at **2635 Meadows Trail Ln, Chula Vista, California**, which is further described in Attachment A.

10. Accordingly, based on my training and experience, conversations with other law enforcement officials, and the facts of this investigations, I believe the items set forth in Attachment B, incorporated herein by reference, will likely be found at the above-described location.

DATED:   May 1, 2008

Jeff Clark
Special Agent
Drug Enforcement Administration

SUBSCRIBED TO AND SWORN TO BEFORE
ME ON May 1, 2008 at 5 A.M./P.M.

THE HONORABLE NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

Description of the Residence at

**2635 Meadows Trail, Chula Vista, California**

The premises located at **2635 Meadows Trail, Chula Vista, California**, including the residence, all rooms, adjoining storage areas, safes, briefcases, containers, garages, trash containers, vehicles inside and/or associated with the residence by registration information or ownership, and other storage receptacles. The residence and premises are described as follows: This residence is located on the east side of Meadow Trail lane, in Chula Vista, California. The premise is a two-story single family residence, having a tan stucco exterior and brown shingle roof. The structure has a two-car garage door at located on the south side of the residence, with the front door on the north-side of the residence.

## ATTACHMENT B

Property to Be Seized

A. United States and foreign currency;

B. Documents related to or reflecting the possession, distribution, storage, and/or sale of controlled substances and the laundering of drug proceeds. To include, but not limited to, money ledgers; supplier and distribution lists, customer lists, correspondence, notations, logs, journals, books, pay and owe sheets, records and documents noting price, dates, times, transfers, and storage of drugs and/or money;

C. Business records or documents at **2635 Meadow Trail Ln, Chula Vista, California**; financial instruments purchased with currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, money orders, cashier's checks, certificates of deposit and other negotiable instruments, as well as money counting machines, money wrappers, rubber bands, boxes, bags, briefcases, suitcases, and containers used to carry controlled substances or the proceeds derived from the sale of controlled substances;

D. Documents and articles of personal property evidencing the obtaining, secreting, transferring, expenditure and/or concealment of money and assets derived from or used to facilitate the distribution, storage, transportation and sale of drugs, including but not limited to, records, money drafts, money orders and cashier's check receipts, passbooks, and bank checks;

E. Documents, records receipts, contracts and agreements relating to the lease or rental of the following: Storage facilities, safety deposit boxes, and real property;

F. Financial proceeds and articles of personal property evidencing the sale of controlled substances and the laundering of drug proceeds, including United States and foreign currency, artwork, precious metals and stones, jewelry, negotiable instruments and financial instruments including stocks and bonds, and deeds to real property;

G. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals and stones, jewelry, artwork or other items obtained with the proceeds of the sales of controlled substances.;

H. Records, items and documents reflecting travel for the purpose of participating in drug trafficking, or the movement and/or transfer of drug proceeds, including passports, airline tickets, rental car agreements, credit card receipts, travel vouchers, hotel and restaurant receipts, and canceled checks;

I. Documents, photographs, and articles of personal property evidencing the identity of persons occupying, possessing, residing in, owning, frequenting or controlling the premises or documents showing dominion and control of said premises to be searched or property therein, including keys, rental agreements and records, property acquisition records, loan records, loan payment records, utility and telephone bills and receipts, photographs, answering machine tape recordings, telephone beeper or paging devices, vehicle or vessel records, canceled mail envelopes, correspondence, financial document such as tax returns, bank records, safety deposit box records, canceled checks, and other records of income and expenditures, credit card and bank records, safety deposit records, identification documents, and documents evidencing obtaining of false identification, including birth certificates, drivers' licenses, immigration cards, and other forms of identification in which the same person would use names and identities other than his or her own;

J. Photographs of individuals possessing, distributing, and/or manufacturing controlled substances, and/or individuals transferring, counting or otherwise handling large sums of cash;

K. Telephone paging devices, cellular and digital telephones, car telephones, two-way radios, facsimile machines, answering machines and tapes, telephone encryption devices and electronic countermeasures which can be used to thwart detection by law enforcement, telephone calling cards and other communication devices which evidence participation in smuggling, storing or distributing controlled substances and the laundering of drug proceeds;

L. Documents and articles of personal property evidencing the existence of conspiracy to possess and sell controlled substances and the laundering of drug proceeds, including personal telephone and address books, photographs, audio and video tapes, facsimiles, other listings (including electronic organizers, rolodexes, telephone answering pads, letters, cables, telegrams, telephone bills, personal notes) and other items reflecting names, identities, addresses, telephone numbers, communications, and illegal activities of associates involved in drug trafficking;

M. Weapons and ammunition which may be used to facilitate the distribution of and/or possession of with the intent to distribute, controlled substances and the laundering of money;

N. Any vehicle parked at or near the above-described location provided it can be connected to an occupant of the premises by way of admissions, keys, photographs, Department of Motor Vehicles documents, insurance papers, or repair receipts.